1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

13

JOSEPH Mc DANIELS,

14                              Plaintiff,

15                  v.

16    TOM SUSS *et al*.,

17                              Defendants.

18

Case No.  C07-5221RBL/JKA

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**March 28, 2008**

19        This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge

20    pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and

21    MJR 4.  Before the court are cross motions for summary judgment (Dkt # 19 and 20).  Having reviewed the

22    entire file the court recommends Defendant's motion for summary judgment be **GRANTED IN PART AND**

23    **DENIED IN PART** and that plaintiff's motion for summary judgment be **DENIED**. The issue that survives

24    summary judgment should be set for trial.

25                                FACTS

26        Plaintiff alleges he is Muslim (Dkt. # 4, complaint).  He alleges the defendants violated his First

27    Amendment Right to freely practice his religion and also violated rights granted him under the Religious Land

28    Use and Institutionalized Persons Act, RLUIPA, in the following manner:

REPORT AND RECOMMENDATION
Page - 1

1.     Failed to provide a sponsor for Islam optional evening prayer, "Taraweeh," during October of 2005, at the Mc Neil Island Corrections Center, MICC.

2.     Repeated refusals to let "inmates with the knowledge to lead the prayer service" lead the Jumah services.

3.     Refused to let inmates have Taraweeh, an optional extra evening prayer, during Ramadan at MICC in 2005.

4.     Limited the number of prayer oils plaintiff could order to three types. Asatru practitioners are allowed to pick from over 25 different oils. No inmate is allowed to possess more than three one oz. bottles at a time. The issue is limiting Muslims to only three choices.

5.     Prevented plaintiff from participating in Ramadan fast during 2006, at the Washington State Penitentiary, WSP.

Plaintiff asks for $75, 000 dollars in damages and the right to order his prayer oils from a larger selection of prayer oils (Dkt. # 4). The named defendants are three chaplains. Two of them work at the Mc Neil Island Corrections Center and one works at the Washington State Penitentiary.

The parties agree on the majority of facts in this case. In the fall of 2005, Mc Neil Island Corrections Center did not have a Muslim sponsor (Dkt. # 19, page 8). Inmates cannot meet as a group without a sponsor. The chaplains or prison staff acted as sponsors for the five daily prayers held during Ramadan and for the Jumah congregational prayer meetings on Fridays, but there was no sponsor for the optional sixth daily congregational prayer called, evening prayer or, Taraweeh. Without a sponsor the inmates were not allowed to meet for this optional evening prayer although nothing prevented plaintiff from praying on his own (Dkt. # 19, page 8). Plaintiff alleges it is his belief that praying a sixth time may make his god look more favorably on him and his family and that evening prayer is a congregational prayer (Dkt. # 23, page 2 ¶ 5).

The parties agree that one inmate is not allowed to repeatedly lead prayer services, and no inmate may serve as the Imam. Plaintiff alleges this violates his rights to practice his religion because the Imam must be picked from the community (Dkt. # 23, page 2 and 3). Plaintiff admits he does not seek to be the Imam. Defendants contend allowing a single inmate to act as a religious leader raises security concerns and they will not allow the same inmate to lead prayer services two weeks in a row (Dkt. # 20, page 17). The defendant's position is codified in policy.

Muslim inmates may choose from three different types of prayer oil, Rose, Jasmine, or Musk (Dkt. # 19 Exhibit 1 attachment E). In contrast persons who have signed a preference for the Asatru religion may pick from 26 different prayer oils (Dkt. # 19 Exhibit 1 Attachment E). Defendants argue plaintiff does not need oils

1   to practice his religion, and if he wanted a fragrance other than one of the three allowed for in the religious

2   property matrix he could make a request to have that fragrance.  Plaintiff admits he does not know what other

3   fragrance he might like but he believes he must wear the "best of fragrances."

4           In the fall of 2006, Plaintiff was transferred to the Washington State Penitentiary, WSP. He alleges he

5   sent a number of kites to the chaplain and the chapel seeking to be placed on the list for the Ramadan fasting.

6   Inmates placed on this list receive a breakfast before sunrise and a sack meal to eat after sunset.  Plaintiff

7   alleges his requests were never answered and he was prevented from observing Ramadan.  Plaintiff alleges

8   participation in Ramadan is mandatory to his faith and his beliefs (Dkt. # 20, page 4).  Defendant Gil Alden, the

9   WSP chaplain, alleges he never received a kite from plaintiff and that after Ramadan began plaintiff did

10  nothing to bring the mater to his attention until filing a grievance at nearly the end of the fasting period.

11          Defendants move for summary judgment and argue none of the actions taken by them violated any

12  right or duty owed plaintiff because his right to practice his religion was not substantially burdened.

13  Defendants also argue they are entitled to qualified immunity from damages (Dkt. # 19).  Plaintiff argues he is

14  entitled to summary judgment on every claim.

15                                    <u>STANDARD OF REVIEW</u>

16          Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

17  depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there

18  is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.

19  R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails

20  to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden

21  of proof.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1985).

22          There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational

23  trier of fact to find for the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

24  586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

25  metaphysical doubt.").  <u>*See also*</u> Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact

26  exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

27  the differing versions of the truth.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986); <u>T. W. Elec.</u>

28  <u>Service Inc. v. Pacific Electrical Contractors Association</u>, 809 F.2d 626, 630 (9th Cir. 1987).

1    The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

2    e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

3    809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party

4    only when the facts specifically attested by the party contradicts facts specifically attested by the moving party.

5    Id.

6    The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in

7    hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at 630

8    (relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing

9    facts" will not be "presumed."  Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

10   The standard of review for a First Amendment claim and the standard of review for a claim brought

11   pursuant to R.L.U.I..P.A. are different.  First Amendment claims are subject to the four part reasonably related

12   to a legitimate penological goal test.  Turner v. Safely, 482 U.S. 78, 89 (1987). This four prong test applies

13   to religious rights under the First Amendment.  O'Lone v Estate of Shabazz, 482 U.S. 342 (1983)

14   "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as

15   a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417

16   U.S. 817,  822 (1974).  Prison regulations that limit an inmate's constitutional rights are valid if they are

17   "reasonably related to legitimate penological interests."  Turner v. Safely, 482 U.S. 78, 89 (1987).

18   The Supreme Court has set forth the factors to be used in determining the reasonableness of a

19   prison regulation:  1) There must be a valid, rational connection between the regulation and the legitimate

20   governmental interest put forward to justify it.  A regulation cannot be sustained where the logical

21   connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or

22   irrational.  The government objective must be a legitimate and neutral one.  It is important to inquire if

23   prison regulations restricting First Amendment rights operate in a neutral fashion, without regard to the

24   content of the expression.  2) Is there another alternative means of exercising the right that remains open?

25   If so, courts should be particularly conscious of the measure of judicial deference owed to corrections

26   officials.  3) What impact will the accommodation of the asserted right have on guards, other inmates and

27   the allocation of prison resources generally?  If the accommodation will have a significant ripple effect the

28   courts should be particularly deferential to the informed discretion of correctional officials.  4) The absence

1    of ready alternatives is evidence of the reasonableness of a prison regulation. <u>Turner</u> at 89-90.

2          Under RLUIPA the court also considers the four factor test. The difference is that the fit between the

3 government action taken and the penological goal must be closer, and the court must consider if the

4 governmental intrusion is the least restrictive means of accomplishing a compelling government interest. This

5 is not a return to the least restrictive alternative test set forth in <u>Procunier v. Martinez</u>, 416 U. S. 396 (1974).

6 Rather, it is a test that gives deference to prison officials and considers the four factors set forth in <u>Turner v</u>

7 <u>Safley</u>, 482 U.S. 78 (1983); and <u>O'Lone v Estate of Shabazz</u>, 482 U.S. 342 (1983). The Supreme Court has

8 considered RULIPA and held the act does not eliminate the deference given to prison administrators who

9 are charged with running state institutions. <u>Cutter v. Wilkinson</u>, 544 U.S. 709 (2005). Both the Supreme

10 Court and Congress have indicated RLUIPA must be applied as follows:

11        [W]ith "due deference to the experience and expertise of prison and jail administrators in
       establishing necessary regulations and procedures to maintain good order, security and
12        discipline, consistent with consideration of costs and limited resources."

13 <u>Cutter</u>, 544 U.S. At 724 (quoting Joint Statement S7775 (quoting S. Rep. No. 103-11, p. 10 (1993), U.S.s

14 Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900)).

15          The Ninth Circuit has held that when considering a RLUIPA claim the first step is to consider if the

16 plaintiff can show a "substantial burden" on his religion. <u>Shakur v. Schriro</u>, ___ F.3d ____ 2008 WL 185496

17 (9th Cir. 2008). A burden is substantial when the state denies an important benefit because of conduct

18 mandated by religious beliefs, thereby putting substantial pressure on an adherent to modify his behavior and to

19 violate his beliefs. The court notes the question addresses the individual's belief, not whether the conduct in

20 question is central to or compelled by the religious faith. <u>Shakur v. Schriro</u>, ___ F.3d ____ 2008 WL 185496

21 (9th Cir. 2008). If the state action creates a substantial burden, the state must show a compelling interest and

22 that the state action is the least restrictive means of accomplishing the compelling interest.

23 DISCUSSION

24        1.     <u>Lack of a sponsor at MICC in 2005, and Taraweeh (optional evening prayer).</u>

25          These two issues are related as inmates were not allowed to have Taraweeh because of the lack of a

26 sponsor. In this case prison officials did not refuse to allow a Muslim sponsor or prevent prisoners from

27 obtaining a Muslim sponsor. To the contrary, the uncontested record shows that the chaplains from MICC

28 were trying to obtain a sponsor for plaintiff's religion during 2005 (Dkt. # 19, Exhibit 3 ¶ 7). In the interim,

1    prison officials and the named chaplains in this action arraigned for either a chaplain or a staff person to act as

2    sponsor so that practitioner's of the Muslim faith could participate in meetings and congregational services

3    required by their faith.  The only meeting plaintiff was not able to have, which he would have liked, was

4    evening prayer or Taraweeh.  This is a congregational prayer according to plaintiff.  By plaintiff's own

5    admission the prayer is optional and not mandated by either his faith or his personal beliefs.

6        Under either a First Amendment analysis or the stricter analysis under RLUIPA defendants are entitled

7    to summary judgment because plaintiff has failed to show a substantial burden to the exercise of his religion.

8    Plaintiff was not placed in a position where he had to modify his beliefs or abstain from a prayer he believed

9    was mandatory because of the lack of a Muslim sponsor.  The need for having a person other than an inmate

10    supervise the inmates is fundamental to the security of the facility and requires no further discussion.

11    Defendants are entitled to summary judgment on the issues of having a sponsor and Taraweeh prayers during

12    2005 at MICC.

13        2.    <u>An inmate Imam</u>.

14        Plaintiff maintains the Imam must be picked from the community and is the person with the knowledge

15    to lead the prayer service.  The Imam leads the mandatory Jumah prayers which starts with a sermon called

16    Khutbah (Dkt. # 19 page 7).  Plaintiff argues the relevant community in this case is the prison and the Imam

17    should be an inmate.  Plaintiff does not claim he should be the Imam (Dkt # 20).

18        Defendants argue it violates Department of Corrections Policy to allow an inmate to act as a spiritual

19    leader for others and raises security concerns and issues.  Defendants state:

20        Offenders are not allowed to hold religious leadership titles, such as "Imam," because it could
         lead to a position of power over other offenders.  Religious groups may have offenders act as a

21        spokesperson for the group, and offenders may lead religious worship services or groups.
         However, the same person may not continuously lead the worship service or group, as that

22        would lead to the assignment of a religious leadership title.

23    (Dkt # 19, Exhibit 6, ¶ 11).

24        Under the four prong test defendants have a valid rational reason for the regulation and their objective

25    is neutral without regard to content of speech.  The first factor favors defendants.  Under the second prong of

26    the test plaintiff is still able to have congregational prayers including Jumah.  The second prong favors

27    defendants.  The parties have not briefed what impact accommodating plaintiff's request to have a prisoner act

28    as Imam would have on prison officials, prison resources or other inmates.  In light of defendants having

security concerns with one inmate having power over another, accommodation may not be possible.  The third factor favors the defendants slightly.  Neither party has placed any ready alternative before the court.  The final factor favors defendants.  Under a First Amendment analysis defendants are entitled to summary judgment.

Under RLUIPA plaintiff fairs no better.  He is not being denied the right to participate in Jumah or any other religious gathering where an Imam would normally lead in prayer.  Thus, he is not being denied an exercise of religion mandated by his faith.  The more relevant question is whether a substantial burden is being placed on plaintiff's exercise of his religious beliefs.  Shakur v. Schriro,  ___ F.3d ____ 2008 WL 185496 (9th Cir. 2008).

Plaintiff argues his belief is that the Imam must come from the community, in this case the prisoners. As defendants deny this request, plaintiff has shown a substantial burden on his practice of religion.  Prison security is certainly a compelling state interest and the court is mindful of the admonishment of the Supreme Court and Congress that prison officials decisions are to be given deference.  Defendants are fearful of having one inmate in a position of power over others.  Plaintiff demands one inmate be chosen to act as Imam which the court views as a position of power over others. Giving deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, the court finds this to be the least restrictive alternative available to prison officials.  Defendants are entitled to summary judgment on this issue. In the alternative defendants would certainly be entitled to qualified immunity on this issue.

3.    Prayer oils.

The court has read the briefing on this issue and believes the claim is inchoate.  Plaintiff alleges he only has a choice of the three prayer oils available for Muslims under the current religious property matrix (Dkt. # 19, Exhibit 2, attachment E). The three oils available are Rose, Jasmine, and Musk.  Plaintiff claims he wants a larger selection of oils and notes that followers of another religion, Asatru, have a choice of 26 oils available to choose from.

Plaintiff does not claim any particular type of prayer oils are mandated by either his faith or beliefs. In fact, plaintiff could not identify an oil fragrance he wanted to purchase.  His belief is that he should wear "the best of fragrances" (Dkt. # 20, page 4).  Defendants argue plaintiff may file a request for a different oil if he believes he needs that fragrance in order to practice his religion (Dkt # 19, page 9 and 10).  The

REPORT AND RECOMMENDATION
Page - 7

1  Department of Corrections has a form, DOC 21-142, for requests of this nature.  Plaintiff does not contest

2  he never made such a request.  In fact, in his deposition plaintiff alleges that even if he had access to all the

3  types of prayer oils allowed other religions in the prison it would not be enough (Dkt. # 19, Exhibit 2

4  Deposition of Mc Daniel's pages 62 to 68).

5       The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior

6  to filing a complaint in federal court.  The relevant portion of the act states:

7       No action shall be brought with respect to prison conditions under section 1983 of this title,
       or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility
8       until such administrative remedies as are available are exhausted.

9  42 U.S.C. § 1997e(a).

10      Here, plaintiff filed this action while incarcerated and the act applies to him.  The United States

11  Supreme Court determined that Congress enacted the provision in order to reduce the quantity and improve the

12  quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002).  By mandating exhaustion, Congress enabled

13  corrections officials to address prisoner complaints internally.  Where exhaustion was once discretionary, it is

14  now mandatory. "All 'available' remedies must now be exhausted; those remedies need not meet federal

15  standards, nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516 (2002) (quoting

16  Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court ruled that " § 1997e(a)'s exhaustion

17  requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter, 534 U.S.

18  at 520.

19      Plaintiff admits in his deposition he did not file a DOC 21-142 form requesting a different prayer oil.

20  (Dkt. # 19, Exhibit 2 Deposition of McDaniels pages 62 to 68).  Thus, an administrative remedy remains

21  open to plaintiff. Requiring exhaustion in this case will certainly improve the quality of the case as plaintiff will

22  be forced to identify the fragrance he is seeking and defendants will be given the opportunity to determine if

23  that particular oil nor fragrance should be allowed into the facility.  Accordingly, plaintiff's claims relating to

24  prayer oils should be **DISMISSED WITHOUT PREJUDICE**.

25      4.   Ramadan 2006, at WSP.

26      Plaintiff states in his motion for summary judgment that all Muslims must observe Ramadan and it

27  is therefore his belief that all Muslims should automatically be placed on the call outs for sack meals

28  provided by the Department during the month of Ramadan.  The court flatly rejects this contention.  Giving

inmates the opportunity to sign up for the religious observance rather than automatically including them does not place a substantial burden on plaintiff and provides the Department with obviously needed information such as an accurate count of how many meals to prepare.  Further, under plaintiff's plan the Department would be essentially forcing inmates who claimed to be Muslim to observe the religious holiday.

Plaintiff alleges that he arrived at the WSP nearly one month before Ramadan began, and he sent at least two kites to the chaplain and the chapel asking to be placed on the list of Muslims who want to observe Ramadan.  Plaintiff provides not only his own statement as evidence regarding the kites but also the statement of a witness, Charles Jackson (Dkt. # 23, exhibit 4).

Defendant Alden submits the following statement of facts:

> Plaintiff claims that in early September 2006 he wrote two kites, one addressed to "WSP Chapel Chaplain" and the other to "WSP Chapel", asking to be put on the call-out sheets for Ramadan. Ex. 2, Att. A, 45:4-12. However, Chaplain Alden has no record of ever receiving any kites from Plaintiff asking to be placed on the Ramadan fast list in 2006. Ex. 5, ¶ 7. Plaintiff states that when Ramadan started, he was not on the call-out sheet for Ramadan. See Complaint; Ex. 2, Att. A, 41:15-19. However, Plaintiff did not write any kites regarding the Ramadan fast after Ramadan started. Ex. 2, Att. A, 45:24-25; 46:1-4. Instead, on October 17, 2006, when there was only one week left of Ramadan, Plaintiff wrote a grievance about not being placed on the call-out sheet for Ramadan. Ex. 7, Declaration of Schrum, Att. A. Plaintiff stated in his grievance, "I have previously signed a religious preference form and I was not placed on the list to be allowed to participate." Ex. 7, Att. A. Plaintiff made no mention of having sent any kites, but merely relied on the fact that he had a Religious Preference form on file. The Grievance Coordinator received the grievance on October 19, 2006. Ex. 7, Att. A. Chaplain Alden responded to the grievance coordinator on October 23, 2006, stating, "If I/M McDaniels is a Muslim but was not on the Ramadahn [sic] List, all he had to do was kite me & have me put him on the list. Many Inmates did this during the course of Ramadahn [sic] & were placed upon the list." Ex. 5, Att. A. Chaplain Alden was not aware that Plaintiff wanted to be placed on the Ramadan fast list until approximately October 23, 2006, when he responded to Plaintiff's grievance. Ex. 5, ¶ 8, Att. A. Plaintiff had no clear explanation for why he waited until the end of Ramadan to write his grievance. Ex. 2, Att. A, 46:14-18.

(Dkt. # 19, pages 11 and 12).  Ramadan ended October 24, 2006.  Defendants argue the failure to place plaintiff on the list for Ramadan was a negligent act at most.  Defendant's state "[a] single instance of negligence is not sufficient to state a valid claim under 42 U.S.C. § 1983 for the violation of free exercise rights. See Lewis v. Mitchell, 416 F. Supp. 2d 935, 944 (S.D. Cal. 2005).  Lewis involved a Muslim inmate eating Turkey ham and later learning it contained pork.  Claims against two defendants survived a motion to dismiss as plaintiff alleged they consciously and intentionally misled him, and that they had read the

packaging label and knew the turkey ham contained pork.

There are several differences between <u>Lewis</u> and the case now before the court. The <u>Lewis</u> decision was at the motion to dismiss stage and plaintiff was given leave to amend. This case is at the summary judgment stage. Second, the <u>Lewis</u> case involved one specific instance of conduct, not a situation where the allegations are that multiple kites were sent and ignored. Finally viewing the facts in a light most favorable to the nonmoving party, the court cannot conclude a trier of fact could not find that Defendant Alden received and ignored the kites sent to him.

There are several issues of fact precluding summary judgment for either party. The first of these issues is whether kites were actually sent to defendant Alden. The second is whether the kites reached defendant Alden. The third is whether defendant Alden intentionally or negligently did not place plaintiff's name on the list for Ramadan.

The court notes Ramadan is a mandatory religious ceremony under both plaintiff's faith and under his personal beliefs. Plaintiff was not allowed to have food at a time when he could eat it during this ceremonial fast, and he was thus unable to participate in a ceremony mandated by his beliefs. Defendants have not alleged there is a rational reason for not including plaintiff on the list of persons wishing to observe the ceremony. Instead, defendant pled negligence. The first factor of four factors of a <u>Turner</u> analysis favors plaintiff. The parties have not briefed what alternatives may have remained open to plaintiff to observe Ramadan. The court has no information showing what food plaintiff may have been able to purchase to eat in cell, or if he is even allowed to have food in his cell. On the record before the court, the second factor favors plaintiff. Many inmates were allowed to have sack lunches and breakfasts before dawn. Thus, there was an accommodation that was not provided to the plaintiff. The third factor of the analysis favors plaintiff. Finally, the existence of the alternatives in the form of sack lunches favors plaintiff.

The court is aware that defendants contention is that the denial in this case was negligent rather than intentional, however, under a First Amendment analysis, where issues of fact are in dispute, there may have been a violation of plaintiff's First Amendment right to exercise of religion and a violation of the rights granted him under RLUIPA. Defendant Alden's motion for summary judgment should be **DENIED.**

5.    Qualified immunity.

Defendants argue they are entitled to qualified immunity from damages (Dkt # 19, page 21 and 22). Defendants Suss and Barnes are not in need of qualified immunity as their actions did not violate any right or duty owed plaintiff.

Defendant Alden's claim of qualified immunity rests on a finding of fact as to whether he knew of or was aware that plaintiff wanted to participate in Ramadan.  It is well settled that a public official who performs a discretionary function enjoys qualified immunity in a civil action for damages, provided that his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 480 (1991).

The Supreme Court established a two-part test for determining whether an official is entitled to qualified immunity. First, the Court must determine whether the facts, when taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Cruz v Kauai County, 279 F.3d 1064 (9th Cir. 2002); Boyd v Benton County, 374 F.3d 773 (9th Cir. 2004). Then, if a violation is articulated, the Court must ascertain whether the constitutional right at issue was "clearly established" at the time of the alleged violation. Saucier, 533 U.S. at 201; *Cruz* 279 F.2d at 1069.

Here, the court has already found a question of fact regarding plaintiff's First Amendment right to

exercise his religion and a RLUIPA violation.  The contours of the rights were clearly established by 2006 to the extent that prison officials should have been aware that an inmate could not be denied the ability to fast during Ramadan if the inmate took the steps needed to inform prison officials he was Muslim and wished to participate in the fast.  Thus, issues of fact preclude granting qualified immunity to defendant Alden.

      6.    <u>Plaintiff's motion for summary judgment</u>.

Defendant Alden alleges he has no record of plaintiff sending him any kite prior to Ramadan beginning in 2006 (Dkt. # 19).  Plaintiff contends he sent two such kites (Dkt # 20).  The record is clear that once Ramadan began, plaintiff did nothing to inform the defendant he wanted to participate in the fast until he sent a grievance in late October.  The grievance was not typed and sent to defendant Alden until October 20, 2006 and was not responded to until October 23, 2006. Ramadan ended October 24, 2006. The issues of fact previously noted in this Report and Recommendation preclude a grant of summary judgment to plaintiff as well as defendant.

      7.    <u>Claims not in the complaint</u>.

In his cross motion for summary judgment plaintiff raises claims for not being allowed to attend the feast that marks the end of Ramdan.  This feast is called Eid-Ul-Fitr (Dkt. # 24, page 2 ¶ 9).  This claim was not part of the complaint and is not properly before the court.

CONCLUSION

Defendants Suss and Barnes are entitled to summary judgment in their favor.  Their motion for Summary judgment should be **GRANTED.**  Issues of fact preclude granting summary judgment or qualified immunity to defendant Alden.  Alden's motion for summary judgment should be **DENIED.** Plaintiff's cross motion for summary judgment should be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ.

REPORT AND RECOMMENDATION
Page - 12

P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v</u> <u>Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **March 28, 2008**, as noted in the caption.

        DATED this 11 day of March, 2008.


                                    <u>/S/ *J. Kelley Arnold*</u>
                                    J. Kelley Arnold
                                    United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 13